**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>MARKET FINDERS INSURANCE CORPORATION, a Kentucky Corporation,<br><br>    Defendant. | No. CV 04-118-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is Defendant Market Finder's ("MF") Motion for Summary Judgment. (Doc. 128.) Plaintiff Scottsdale Insurance Company ("SIC") filed a Response to the Motion for Summary Judgment (Doc. 138), and MF filed a Reply (Doc. 141). After consideration of the arguments advanced by the parties, the Court finds the following[1].

**BACKGROUND**

MF is an excess and surplus lines insurance broker specializing in products including medical professional liability insurance ("MPLI"). SIC is a property and casualty insurer

---

[1] The request for oral argument is denied because the parties have thoroughly discussed the law and evidence, and oral argument will not aid the Court's decision. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

specializing in excess and surplus lines. MF and SIC entered into a General Agency Agreement ("Agency Agreement") granting MF authority to act as SIC's agent[2] subject to a number of restrictions and responsibilities[3]. (Doc. 129.) In addition to the provisions of the Agency Agreement, the agreement provides further clarification of the agent's authority:

> "[SIC] hereby grants and empowers [MF]:
> (B) ...to quote, bind, execute, amend, delete, make adjustments and renew insurance contracts...
> (C) To cancel and renew Contracts, at the Agent's discretion...
> (E) To collect, receive and receipt for premiums on Contracts placed with the Company by the Agent and to retain out of Premiums so collected, as full compensation for such Contracts commissions...
> (F) To perform all field work and underwrite the business...
> (G) ...Authority extended by this Agreement shall not be delegated by the Agent to any person unless expressly authorized in writing by an officer of the Company
> (I) The Company and Agent mutually agree that this Agreement is served when the Agent has the right to exercise independent judgment as to time, place, and manner of soliciting insurance applications, serving policy holders, and otherwise carrying out the provisions of this Agreement."

(Doc. 139.) The Agency Agreement also requires MF to forward "copies of all binders, policies certificates and endorsements of Contracts issued by [MF], or to otherwise notify [SIC] of all liability accepted within twenty (20) working days following acceptance by [MF]." *Id.*

On or about June 23, 1999, MF received a new business submission from Healthcare Insurance Services, Inc ("HIS") on behalf[4] of HIS's client Anesthesiology Consultants of Toledo, Inc. ("ACT"). (Doc. 129, Ex. 5.) In August of 1999, HIS and MF negotiated a

---

[2]Typically, an insurer will employ an agent to represent the insurer in third party dealings on insurance matters. Douglas R. Richmond, *Insurance Agent and Broker Liability*, 758 PLI Lit 131, 135 (2007).

[3]For more specific details regarding the content of the Agency Agreement, see a complete copy of the agreement. (Doc. 129.)

[4]HIS was employed by ACT as a broker to find ACT the most suitable insurance coverage.

Proposal of Insurance ("the Proposal") for a Claims-Made[5] MPLI policy to be carried by SIC. (Doc. 129, Ex. 6.) The Proposal provided that HIS would renew enrollment and maintain providers' active status with the Indiana Patient Compensation Fund[6] (IPCF) and the charges would be born by SIC.

On or about September 9, 1999, HIS contacted ACT via facsimile to advise ACT that it was working on renewing enrollment in the IPCF for five physicians, including Dr. Dinius. (Doc. 129, Ex. 8.) ACT responded by copying the document and sending it back to HIS with Dr. Dinius' name crossed off the list. (Doc. 129, Ex. 9.) The name of another doctor was added to the list of other physicians to be enrolled. *Id*. HIS acknowledged the change in a subsequent facsimile, and it successfully enrolled the five doctors, not including Dr. Dinius, in the IPCF. (Doc. 129, Ex., 14-15.)

On December 6, 1999, SIC issued Endorsement 13 to attach to the policy, effective August 31, 1999. (Doc. 129, Ex. 17.) Endorsement 13 listed the five physicians that would be limited to $250,000 per claim, erroneously including Dr. Dinius. *Id*. The SIC policy stated that the premium to be paid for coverage available for Dr. Dinius would be $5,522.00. *Id*. The premiums to be paid for the coverage available to the ACT employees enrolled in the IPCF was $881.00. *Id*.

In a documented phone discussion occurring on January 3, 2000, HIS advised MF to correct Endorsement 13 to reflect the replacement of Dr. Dinius with Dr. William Chafee as a physician enrolled in the IPCF. (Doc. 129, Ex. 20.) On February 21, 2000, Endorsement

---

[5]Claims-Made insurance policies protect the policyholder against claims made during the life of the policy. 45 C.J.S. *Insurance* § 642 (2008).

[6]The IPCF, established under Indiana's Medical Malpractice Act, caps the amount of damages a medical malpractice claimant can recover from a qualified healthcare provider at $250,000. For a healthcare provider to be qualified under the IPCF, the healthcare provider must complete appropriate filings with the Commissioner including the submission of proof of financial responsibility and payment of a surcharge. (IND. Code §§ 34-18-4, 5).

- 3 -

23 was created replacing Dr. Dinius with Dr. William Chafee as an enrolled physician in IPCF, effective August 31, 2000. (Doc. 129, Ex. 17.)

In January 2000, HIS sent MF a letter enclosing various documents including a Notice of Claim form stamped "Claims Jan 18 2000 Department," and an Incident Report prepared by Dr. Dinius and signed on November 13, 1999. The Incident Report documented an incident ("Conyers incident") that occurred on April 9, 1999 involving patient Anita Conyers ("Conyers"). (Doc. 129, Ex. 22.) MF forwarded the Initial Conyers Claim Submission to SIC on January 21, 2000. (Doc. 129, Ex. 22-23.)

On February 10, 2000, SIC sent a letter to ACT confirming a telephone conversation where the parties discussed the Conyers incident. SIC stated that "[under] Coverage A, for Individual Professional Liability coverage, [Dr. Dinius] is covered for $5,000,000 per physician, with a $7,000,000 annual aggregate. His retroactive date is August 1, 1998." (Doc. 129, Ex. 24.) On May 5, 2000, Conyers filed a formal complaint ("Conyers case") with the State of Indiana's Department of Insurance. (Doc 129, Ex. 25.) In a letter to ACT, SIC confirmed receipt of the Conyers claim for damages and restated that the policy limits were $5 million per claim and $7 million per annual aggregate under Coverage A and B. (Doc. 129, Ex. 26.)

A settlement was reached in the Conyers case and SIC reported on August 13, 2003 that it paid $1,387,235.00 to settle the Conyers claim against Dr. Dinius and his attending nurse for failing to monitor a patient after administration of anesthesia. (Doc. 129, Ex. 34.)

## PROCEDURAL HISTORY

SIC filed its Complaint against MF on January 20, 2004. (Doc. 1.) SIC's general allegation was that MF breached its duty to enroll Dr. Dinius in the IPCF, thereby exposing SIC to damages in the amount of $1,137,235.00. The Complaint consisted of four separate counts: (1) negligence, (2) breach of contract, (3) indemnity and/or contribution, and (4) breach of fiduciary duty. MF drafted a Third-Party Complaint against Third-Party Defendant

- 4 -

HIS on March 23, 2004. (Doc. 17.) The parties scheduled a period for arbitration commencing in September 2004 and closing in February 2005. Arbitration was not successful and thus the case was returned to this Court for further proceedings. Thereafter on October 9, 2007, MF filed the instant Motion for Summary Judgment. (Doc. 128).

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24F.3d at 1130.

A principle purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324. However, the nonnmovant "may not rest upon mere

allegations or denials of [the party's] pleadings, but ...must set forth specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044,1049 (9th Cir. 1995).

## DISCUSSION

"To prevail on a breach of contract claim, [a plaintiff] must show the existence of a contract, breach of that contract's terms, and resulting damage." *Howell v. Midway Holdings, Inc.*, 362 F.Supp.2d 1158,1160 (D. Ariz. 2005) (citing *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)). Here, SIC fails to set forth the necessary facts to establish that MF had a contractual duty to SIC, that there was a breach of any alleged duty, or causation of damages as a result of any alleged breach. *Matsushita*, 475 U.S. at 585-588 (1986); *Brinson* at 1049. The Court therefore enters summary judgment in favor of MF.

### A. Duty and Breach

MF argues that summary judgment should be entered in its favor because SIC fails to establish that MF had a contractual duty to enroll Dr. Dinius in the IPCF. MF further contends that there is no express duty found in the written provisions of the Agency Agreement or present in any state law requirements. However, SIC contends that enrolling Dr. Dinius in the IPCF was both a contractual and fiduciary duty. SIC further contends that the duty to enroll Dr. Dinius in the IPCF arose from the duty of loyalty inherent in a principal-agent relationship and the covenant of good faith and fair dealing implicit in the Agency Agreement.

Breach of contract actions arise out of violations of specifically enumerated duties in the contract. *Resolution Trust Corp v. W. Tech. Inc.*, 421 P.2d 318, 320 (Ariz. 1966). However, if substantial facts are set forth, additional terms or duties may arise regardless of an express provision. "The general rule is that the determination whether in a particular case a promise should be implied in fact is a question of fact. Where reasonable minds may draw

1 different conclusions or inferences from undisputed evidentiary facts, a question of fact is presented." *Wagenseller v. Scottsdale Mem. Hosp.*, 710 P.2d 1025, 1038 (Ariz. 1985) (superseded by statute on other grounds) (citations omitted).  The Restatement of Contracts[7] states that in cases where parties omit essential terms of the contract out of lack of foresight, the court may supply the omitted term if they have substantial evidence that "the parties would have agreed to [it] if the question had been brought to their attention." Restatement, § 204, comment d.  Every contract under Arizona law also incorporates the implied covenant of good faith and fair dealing. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).  The implied covenant provides a remedy against a party who "exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Southwest Sav. & Loan Assoc. v. SunAmp Sys., Inc.*, 838 P.2d 1314,1319 (Ariz. Ct. App. 1992).  While these duties are often a question of fact, sufficient evidence must be proffered in support of the claim. *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 355 (Ariz. Ct. App. 1996) ("[a]lthough the existence of a fiduciary duty is generally a question of fact, '[w]hen the evidence is insufficient to support a verdict, the trial court has a duty to decide the issue.'") (internal quotations and citations omitted).

Here, the Agency Agreement existing between SIC and MF does not enumerate any express duty to enroll SIC insureds, including Dr. Dinius, in the IPCF.  SIC fails to proffer evidence to establish that the Court should infer the existence of a duty not expressed in the written provisions of the contract.  It is beyond the Court's role to imply that both parties intended to include a provision *requiring* enrollment in *voluntary* compensation program in Indiana.  Further, although SIC alleges MF violated the duties of a fiduciary partner and the covenant of good faith and fair dealing, SIC fails to set forth a reasonable interpretation of the facts that would substantiate such allegations.  Documented communication between SIC,

---

[7]Arizona generally follows Restatement in absence of contrary authority. *Powers v. Taser Int'l, Inc.*, 217 Ariz. 398, 403 (Ariz. Ct. App. 2007).

1  MF, and third parties, as well as the Proposal, fail to establish an expectation that MF had a
2  duty to enroll any of the insureds in the IPCF.  Further,  ACT specifically instructed HIS to
3  *not* enroll Dr. Dinius in the IPCF.

4  Even assuming SIC could establish MF's duty to enroll its insureds in the IPCF fund,
5  SIC does not allege that MF would have reason to specifically enroll Dr. Dinius in the IPCF.
6  The record reflects that SIC communicated to ACT on more than one occasion that Dr. Dinius
7  was covered for $5 million per physician and $7 million annual aggregate and not the IPCF
8  cap.  SIC does not provide the Court with any evidence that MF or SIC intended for Dr.
9  Dinius to have a $250,000 cap on his coverage for his participation in the IPCF.  Further, SIC
10 fails to provide an interpretation of facts that would account for the discrepancy between the
11 $250,000 enrollment cap Dr. Dinius would have had if he was enrolled in IPCF and the $5
12 million physician/ $7 million annual aggregate coverage SIC represented to ACT.  Further,
13 as previously articulated, ACT clearly instructed HIS in a series of documented faxes to *not*
14 enroll Dr. Dinius in the IPCF.  SIC offers no allegations or interpretation of facts that would
15 explain why MF would be expected to enroll Dr. Dinius in the IPCF despite ACT's
16 instructions to the contrary.  Finally, SIC charged Dr. Dinius a higher premium than the
17 doctors enrolled in the IPCF, implying that SIC accepted the risk of Dr. Dinius not being
18 enrolled in the IPCF, consequently charging him a higher premium.  SIC fails to establish the
19 existence of a duty or reasonable expectation thereof by either party for MF to enroll Dr.
20 Dinius in the IPCF.

21 **B.  Causation of Damages**

22 MF argues that SIC fails to provide evidence that MF's alleged breach of duty caused
23 the damages claimed.  MF argues that Dr. Dinius and his attending nurse were not entitled to
24 capped liability under the IPCF.  Further, MF contends that there was no evidence brought
25 forth by SIC to establish Dr. Dinius's percentage of fault or to establish how settlement funds
26 were apportioned.  Moreover, MF argues that SIC could not have been damaged by the
27

alleged breach because SIC accepted a premium to provide Dr. Dinius in the amount of $5 million per claim and $7 million per annual aggregate and therefore accepted the risk of claims against the coverage.

Mere allegations without the support of evidence are insufficient to refute issues raised in a motion for summary judgment. Fed. R. Civ. P. 56(e). Even viewing the facts and inferences in the light most favorable to the nonmoving party, the Court is only obligated to consider evidence specifically referred to in the record. *Id.* ("Memoranda of law filed in support of or in opposition to a motion for summary judgment, including Reply memoranda, shall include citations to the specific paragraph in the statement of facts that supports factual assertions made in the memoranda."). The district court need only consider evidence set forth in the moving or opposing papers and parts of the record specifically referred to therein. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001). Further, a related settlement does not accurately represent the actual damages incurred as a result of the alleged breach of a contract. *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 213 (1994) ("[S]ettlements seldom reflect an entirely accurate prediction of the outcome of a trial. Moreover, the settlement figure is likely to be significantly less than the settling defendant's equitable share of the loss, because settlement reflects the uncertainty of trial and provides the plaintiff with a 'war chest' with which to finance the litigation against the remaining defendants.").

Assuming *arguendo* that SIC had provided the necessary evidentiary support to establish MF's duty and breach of that duty, SIC still fails to provide or direct the Court to any evidence establishing causation between the Conyers incident and MF's duty to enroll Dr. Dinius in the IPCF. Production of such evidence is required to refute MF's argument alleging the nonexistence of the elements of causation and damages for each of SIC's original claims. Specifically, if the Conyers incident would not have been covered by the IPCF, MF's decision not to enroll Dr. Dinius in the IPCF necessarily could not have resulted in any damages to

1 SIC. SIC did not set forth the necessary facts to establish a causal link between the Conyers
2 incident and the alleged duty to enroll, or a reasonable interpretation of the damages caused
3 as a result of the alleged breach.

4       Because SIC has failed to provide evidence to establish causation and damages
5 necessary for each of its claims, summary judgment entered in favor of MF is appropriate as
6 a matter of law. *Celotex*, 477 U.S. at 323-24.

7 **C. Tortious Claims**

8       MF alleges that the claims brought forth by SIC should be governed by tort law instead
9 of contract law because they involve the breach of professional duties. MF further contends
10 that because SIC fails to assert that this case does not involve the alleged breach of
11 professional duties, the Court must view the claims in the context of tort law. The Court
12 disagrees.

13       Under Arizona law, breaches of *implied* contracts may be ruled upon by tort law.
14 *Barmat v. John and Jane Doe Partners A-D*, 155 Ariz. 519, 523 (Ariz. Ct. App. 1987)
15 ("[W]here the implied contract does no more than place the parties in a relationship in which
16 the law then imposes certain duties recognized by public policy, the gravamen of the
17 subsequent action for breach is tort, not contract.) (citing *Lewin v. Miller Wagner & Co., Ltd.*,
18 151 Ariz. 29, 36 (Ariz. Ct. App. 1986)). "Where, however, the duty breached is not imposed
19 by law, but is a duty created by the contractual relationship, and would not exist "but for" the
20 contract, then breach of either express covenants or those necessarily implied from them
21 sounds in contract. The essence of such actions arises "out of a contract," eligible for an
22 award of fees under the statute." *Id*. (citations omitted).

23       Here, the alleged breach of duty would not exist "but for" the relationship formed by
24 the contract between MF and SIC. Therefore, the Court finds that the claims alleged arise out
25 of a contract and thus, tort law is not applicable. Further, despite SIC's failure to allege the
26 appropriate defense to MF's contentions, the Court has an obligation to determine issues
27

under the *applicable* law. Therefore, the Court finds that the application of tort law would not be appropriate per SIC's claims.

## CONCLUSION

The district court need only consider evidence set forth in the moving or opposing papers and parts of the record specifically referred to therein. *Carmen*, 237 F.3d at 1029. In a breach of duty claim, the plaintiff must set forth evidence to establish the defendant had a duty, the defendant breached the duty, and the breach caused damages. If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Here, SIC fails to establish the forgoing elements of its claim. Accordingly, summary judgment in favor of MF is **GRANTED**.

**IT IS HEREBY ORDERED** that Defendant MF's Motion for Summary Judgment (Doc. 128.) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this matter.

DATED this 11th day of September, 2008.

Stephen M. McNamee
United States District Judge